**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| Joseph Giganti, Sr.,<br><br>Plaintiff,<br><br>v.<br><br>Patrick W. Moynihan, Jr., in his official capacity as Brown County Clerk; Michelle Seidl, in an official capacity as Clerk for the Village of Bellevue; David Lasee, in his official capacity as Brown County District Attorney; Don M. Millis, Marge Bostelmann, Ann S. Jacobs, Carrie Riepl, Robert F. Spindell, Jr., and Mark L. Thomsen, each in an official capacity as Commissioner of the Wisconsin Elections Commission; and Meagan Wolfe, in her official capacity as Administrator of the Wisconsin Elections Commission.<br><br>Defendants. | Case No. 26-cv-1934<br><br>**COMPLAINT** |

**COMPLAINT FOR DECLARATORY RELIEF AND**
**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff Joseph Giganti, Sr., by and through undersigned counsel, brings this civil action under 42 U.S.C. § 1983 against the official-capacity Defendants identified below. Plaintiff intends to vote in the November 3, 2026 general election and seeks to purchase the election contracts described in this Complaint. The Wisconsin Elections Commission has announced that such a purchase would disqualify him from voting under Wis. Stat. § 6.03(2) and that voting while disqualified may lead to felony prosecution. Plaintiff seeks prospective relief protecting his own ability to cast a ballot and have it counted, without surrendering his ability to engage in the intended transactions, on the federal constitutional grounds pleaded below.

## JURISDICTION

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) and (a)(4) because it seeks equitable relief for the deprivation, under color of state law, of rights secured by the Constitution and of the right to vote.

2. Plaintiff's claims arise under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution. He seeks prospective declaratory and injunctive relief against officials responsible for the challenged conduct, in their official capacities. See *Ex parte Young*, 209 U.S. 123, 157–60 (1908). He does not seek damages.

3. This Court may grant declaratory relief under 28 U.S.C. §§ 2201–2202 and Fed. R. Civ. P. 57, and preliminary and permanent injunctive relief under Fed. R. Civ. P. 65. Plaintiff seeks reasonable attorney's fees and costs under 42 U.S.C. § 1988.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2). Plaintiff resides and is registered to vote in Brown County within this district, and the threatened voting challenge, ballot rejection, canvass determination, and voting-related prosecution would occur here.

## PARTIES

5. Plaintiff Joseph Giganti, Sr. is over the age of 18, a citizen of the United States, and a resident of Brown County, Wisconsin, where he has resided continuously since 2007. His residence and voter registration are in the Village of Bellevue, and his assigned polling place is in Bellevue Village Hall, Ward 8. He satisfies Wis. Stat. § 6.02(1) and every other applicable voting qualification and is subject to no disqualification apart from the challenged application of § 6.03(2) if he proceeds with the transactions described below.

6. Defendant Patrick W. Moynihan, Jr. is the Brown County Clerk. He is sued in his official capacity because his responsibilities include the county canvass under Wis. Stat. § 7.60 and participation in county review of challenged ballots under § 6.95. Plaintiff seeks to prevent the rejection of his ballot during those proceedings solely because of the identified election contracts.

7. Defendant Michelle Seidl is the Clerk for the Village of Bellevue, the municipality where Plaintiff is registered to vote. She is sued in her official capacity because § 7.15 places the municipal clerk in charge of voter registration and election administration in the municipality, including the absentee-ballot functions. As an official in a municipality with more than two wards and more than one polling location, this official will serve on the municipal board of canvassers under § 7.53. Section 6.95 authorizes the municipal board of canvasser to decide any challenge when making canvasses. Plaintiff seeks relief concerning this official's eligibility, ballot-processing, implementation, and canvassing responsibilities.

8. Defendant David Lasee is the Brown County District Attorney. He is sued in his official capacity because the press release and guidance issued by WEC states that voters who violate Wis. Stat. § 603(2) could be referred for prosecution by the District Attorney's office. Plaintiff seeks prospective relief against a voting-related prosecution based solely on the Covered Transactions and the challenged application of § 6.03(2). Under Wis. Stat. § 978.05(1), the District Attorney is responsible for prosecuting election-law violations within their prosecutorial units, subject to the statutory exceptions.

9. Defendants Don M. Millis, Marge Bostelmann, Ann S. Jacobs, Carrie Riepl, Robert F. Spindell, Jr., and Mark L. Thomsen are Commissioners of the Wisconsin Elections Commission ("Commission" or "WEC"). They are sued in their official capacities for their adoption and

implementation of the challenged guidance and their relevant responsibilities under Wis. Stat. § 5.05. Millis, as Chair, also has the state-canvass challenge-review authority under § 6.95.

10. Defendant Meagan Wolfe is the Commission's Administrator. She is sued in her official capacity concerning administration and implementation of the challenged position under Wis. Stat. § 5.05. Specifically, she issued the press release to implement the guidance issued by the WEC, warning voters that wagering on a prediction market and voting in the same election could subject the voter to administrative qualification challenges and referral to the district attorney for prosecution.

11. Each Defendant acts under color of Wisconsin law in performing the challenged official responsibilities. Plaintiff seeks prospective relief against the described federal constitutional violations, limited to the respective authority of the officials before the Court.

## FACTUAL AND LEGAL BACKGROUND

### THE RIGHT TO VOTE AND WISCONSIN'S VOTER QUALIFICATIONS

12. The right to vote is "a fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964).

13. Article III, section 1 of the Wisconsin Constitution provides that every United States citizen age 18 or older who is a resident of an election district in Wisconsin is a qualified elector of that district.

14. Article III, section 2 of the Wisconsin Constitution addresses legislation concerning residency, registration, absentee voting, and the exclusion of persons convicted of a felony unless restored to civil rights, or adjudicated incompetent or partially incompetent by a court. These

provisions supply background concerning Wisconsin's voter qualifications; Plaintiff's claims in this action arise under the United States Constitution.

15. Wisconsin's statutory qualifications track the state constitution: "Every U.S. citizen age 18 or older who has resided in an election district or ward for 28 consecutive days before any election where the citizen offers to vote is an eligible elector." Wis. Stat. § 6.02(1).

16. Plaintiff satisfies each of these qualifications.

17. Wisconsin will hold a general election on November 3, 2026. The office of Governor of Wisconsin is on the ballot at the November 3, 2026 general election.

**WIS. STAT. § 6.03(2)**

18. Wis. Stat. § 6.03(2) provides: "No person shall be allowed to vote in any election in which the person has made or become interested, directly or indirectly, in any bet or wager depending upon the result of the election."

19. Section 6.03(2) does not require a criminal conviction or a finding that the elector engaged in bribery, fraud, manipulation, or improper influence. Its text disqualifies a person because of the specified interest in an election wager. The procedures used to determine and enforce that disqualification are described below.

20. The text contains no scienter requirement and does not distinguish between a vote that favors the elector's financial position and one that does not.

21. The text contains no de minimis exception; it does not distinguish between a one-dollar position and a one-million-dollar position.

22. The text contains no exception for a contract executed on a federally regulated exchange or a wager lawful where made. The federal regulation of an exchange does not itself resolve the constitutional validity of a state voting qualification.

23. The text does not distinguish between a payment made to influence a particular person's vote and an ordinary exchange transaction concerning an aggregate electoral outcome. Plaintiff challenges the loss of his franchise for the latter conduct, on the facts alleged below.

24. The disqualification applies to "any election," including federal, statewide, judicial, county, municipal, and school district elections, and includes interests held "directly or indirectly."

25. Section 6.03(2) does not define "bet," "wager," or an "indirect" interest. Section 945.01(1) separately defines a "bet" for purposes of chapter 945. That criminal-code definition and its exceptions do not automatically determine the application of § 6.03(2) to every event contract.

26. The Commission has announced that election contracts traded on prediction-market platforms fall within § 6.03(2). Plaintiff challenges the constitutionality of that announced application to his identified transactions.

**ENFORCEMENT OF WIS. STAT. § 6.03(2)**

27. Wisconsin law permits challenges to an elector's qualifications at the polling place and when an absentee ballot is processed. Wis. Stat. §§ 6.92–6.95, 7.52(5). An election inspector who knows or suspects that a person offering to vote is not qualified must challenge that person under § 6.92. An elector may challenge another elector under § 6.925.

28. Section 6.94 requires a challenged voter to take an oath addressing voting qualifications, including election wagers, and to answer questions concerning those qualifications. Refusal to take the oath or answer the required questions results in rejection of the vote. Absentee challenges are addressed by §§ 6.93 and 7.52(5).

29. The statutory scheme provides procedures for questioning a challenged elector, receiving a ballot when the applicable requirements are met, preserving the challenge, and

reviewing the ballot during the canvass. Section 6.95 applies the standard in § 6.325: an elector may not be disqualified unless the grounds are demonstrated beyond a reasonable doubt. Plaintiff challenges the substantive exclusion and, in Count IV, the particular inadequacies in notice and a timely opportunity to contest rejection during canvassing alleged below.

30. Under § 6.95, election inspectors mark ballots received from challenged electors after the required oath and questioning so that those ballots can be identified during the canvass.

31. Section 6.95 permits a municipal board of canvassers to set aside a challenged ballot during its canvass under § 7.53 if the standard in § 6.325 is met. The challenge may be reviewed by the county board of canvassers or, for a state canvass, the Commission's chairperson or designee.

32. Section 7.60 allows the county clerk up to 14 days after a general election (and 7 days after a presidential election) to complete its canvassing.

33. While § 6.95 allows challenged ballots to be set aside during canvassing, it does not require individual notice to the elector, if that elector's ballot has been set aside during the canvass. Without notice, that elector would not have the opportunity to contest the canvasser's decision to set aside the elector's vote or file a complaint to the Commission under Section 5.06. Plaintiff's procedural claim concerns § 6.95's failure to afford timely notice and by extension a meaningful opportunity to contest the threatened ballot rejection before the Commission, if he is challenged at the polls and his vote is later disqualified.

34. Although Wisconsin has a website that allows electors to track their votes, clerks are allowed up to 45 days after a general election to record the information in the voter registration system. Therefore, Plaintiff may not know his vote was not counted in time to challenge the canvasser's decision until it is too late.

35. Voting without the necessary qualifications is prohibited by Wis. Stat. § 12.13(1)(a). Section 12.60(1)(a) specifies a Class I felony penalty, with the maximum penalty stated in § 939.50(3)(i). Plaintiff seeks prospective protection from voting-related enforcement based solely on the challenged disqualification for his identified transactions.

**FEDERALLY REGULATED EVENT CONTRACTS**

36. The Commodity Exchange Act, 7 U.S.C. § 1 et seq., establishes the federal regulatory regime applicable to designated contract markets and covered transactions. Section 2(a)(1)(A) describes the CFTC's exclusive jurisdiction over specified transactions, subject to the statute's terms. This regulatory framework supplies the background for Plaintiff's intended transaction.

37. A designated contract market ("DCM") is an exchange designated by the CFTC under the Commodity Exchange Act. Applicable statutory core principles and CFTC regulations govern its rules and contract listings. See 7 U.S.C. § 7; 17 C.F.R. pts. 38, 40.

38. The event contracts at issue provide a payout determined by a specified election outcome. The Commodity Exchange Act contains a special rule for certain event contracts, 7 U.S.C. § 7a-2(c)(5)(C), implemented by 17 C.F.R. § 40.11. DCM designation alone does not constitute approval of every listed contract.

39. QCX LLC, doing business as Polymarket US, is registered with the CFTC as a designated contract market (DCM). *Designated Contract Markets (DCM): QCX LLC d/b/a Polymarket US, Comm. Futures Trading Comm'n (July 9, 2025), https://www.cftc.gov/IndustryOversight/IndustryFilings/TradingOrganizations/49571.* (Compl. Ex. 1). Polymarket US certifies contracts on politics, including Election Winner Contracts (EWC) and United States Gubernatorial Election Winner Contracts (USGUBEWC). QCX LLC d/b/a

Polymarket US, Rule Submission Pursuant to 17 C.F.R. § 40.6, Comm. Futures Trading Comm'n (Sept. 22, 2026), https://www.cftc.gov/filings/orgrules/rules09222628787.pdf. Polymarket US lists the "*Wisconsin Governor Election Winner*" market for the November 3, 2026 election. *See* https://polymarket.us/event/usgub-wi-2026-11-03 (last visited Oct. 9, 2026). (Compl. Ex. 2). Plaintiff's intended transaction concerns the U.S. market operated by QCX LLC, rather than an account on a separate international Polymarket platform.

40. Plaintiff intends an ordinary exchange transaction under the applicable trading rules, rather than a private agreement paying a person for a vote. The proposed position may be closed before settlement to the extent permitted by the contract terms and available liquidity. His intended contract, position, and purchase date are identified below.

41. The proposed contract's payout depends on an aggregate statewide result. Plaintiff's intended transaction is not an agreement to buy a particular vote or to alter ballots or tabulation. The constitutional question is whether the State may exclude this otherwise qualified voter because he holds that position, in light of the nature and size of the position and the State's asserted interests.

42. Plaintiff's principal federal constitutional claim concerns the threatened loss of his vote because of the identified exchange transactions. His alternative First Amendment claim rests on the particular expressive facts alleged below.

**THE COMMISSION'S ANNOUNCED ENFORCEMENT POSITION**

43. On July 9, 2026, Commission staff presented a memorandum entitled "Prediction Markets and Wisconsin Elections," addressing § 6.03(2) and the voting consequences of election wagers made on prediction-market platforms. The memorandum described potential felony consequences for an elector who wagers on an election and then votes in it. *See* Memorandum

from Staff Counsel to Members, Wis. Elections Comm'n, *Prediction Markets and Wisconsin Elections* (July 9, 2026) (Compl. Ex. 3).

44. The Commissioners unanimously adopted the memorandum as guidance on July 9, 2026. On July 21, 2026, the Commission issued a public warning against betting on an election's outcome through platforms such as Kalshi or Polymarket and voting in the same election. *See* Press Release, Wis. Elections Comm'n, *Don't Bet on Your Ballot: WEC Warns Voters Against Election Gambling* (July 21, 2026) (Compl. Ex. 4).

45. The Commission's warning explained that an elector could face a voting-qualification challenge, loss of the ability to cast a ballot, and referral to a district attorney. The warning applies on its terms to Plaintiff's intended election contract and voting plans. Together with the statutory challenge, oath, and criminal provisions, it supplies a credible threat of the challenged enforcement.

**FEDERAL REGULATION OF ELECTION CONTRACTS**

46. In *KalshiEX LLC v. Commodity Futures Trading Commission*, No. 23-3257 (JMC), slip op. at 26–27 (D.D.C. Sept. 12, 2024) (Compl. Ex. 5), the court concluded that Kalshi's particular congressional-control contracts did not involve "gaming" within the meaning of the Commodity Exchange Act's special rule. The decision concerned the CFTC's authority to prohibit those contracts under that rule.

47. That decision did not adjudicate Wisconsin voter qualifications or authorize every election contract under every applicable law. Plaintiff relies on his intended transaction's actual contract terms and regulatory status, and on the federal constitutional voting claims pleaded here.

## PLAINTIFF'S INTENDED TRANSACTION AND VOTING PLANS

48. Plaintiff is the host of The Regular Joe Show, a nationally syndicated radio program originating from Green Bay, Wisconsin, that addresses politics, culture, sports, and current events.

49. Plaintiff is registered to vote and intends to vote in the November 3, 2026 general election, including the gubernatorial contest. He plans to vote in person on November 3, 2026. He has voted in prior elections and considers voting a civic obligation.

50. Plaintiff's intended transaction involves no agreement to pay a candidate, campaign, political party, election official, or another elector for a vote, or to commit bribery, fraud, ballot interference, or manipulation. He intends to cast his ballot independently of any promise to another person concerning how he will vote.

51. On or about August 7, 2026, Plaintiff opened an account with Polymarket US. He intends to use that account for the Covered Transactions, subject to the applicable account and trading requirements.

52. Plaintiff intends to deposit between $100 to $500 into Polymarket US. He intends to purchase $50 - $100 worth of "Yes" contracts to Tom Tiffany winning in the Wisconsin Governor Election Winner, $50 to $100 worth of "Yes" contracts to Derrick Van Orden winning the WI-03 House Election Winner markets upon issuance of a preliminary injunction, and $50 to $100 worth of "Yes" contracts to all other Republican candidates running in Wisconsin, including WI-08, WI-06, and WI-07 House Election Winner. The contract settles according to the determination of the winner. If the candidates he purchased "Yes" contracts to win, his contracts will resolve to $1.00 each. The contract's settlement will depend on the price of the contract on the day he purchases the contract and whether he holds the contract until election day. Those are

all decisions he will make based on the market. He is ready and able to complete the intended transaction, subject to ordinary platform requirements, and would do so if the challenged disqualification and related voting-enforcement threat were enjoined. These identified transactions are referred to below as the "Covered Transactions."

53. For his First Amendment claim, Plaintiff, a conservative radio talk show host, intends the Covered Transaction to communicate his support for Republican candidates for the 2026 Wisconsin elections, through his political forecast of the election, to the audience of his radio show. The audience will understand the Covered Transactions to represent his support for candidates from his political party.

54. Plaintiff has refrained from acting on the Covered Transactions because the Commission's announced position and threat that proceeding would disqualify him from voting or expose him to a voting-related felony charge. He learned of that position within a day or two of it being announced through a friend in the legislature. He does not wish to forfeit his right to vote or risk prosecution.

55. On August 31, 2026, Plaintiff reached out to Competitive Enterprise Institute, whose counsel now represents him.

56. Absent relief, Plaintiff must either abandon the Covered Transactions to preserve his vote or proceed and face the threatened disqualification and related voting-enforcement consequences. That present restraint and threatened loss of the franchise are his injuries; he need not first incur a rejected ballot or criminal prosecution.

57. Plaintiff seeks relief for himself. An order restraining the challenged conduct by the officials responsible for his registration, voting, ballot processing, canvass review, and voting-

related enforcement would prevent or materially reduce these injuries. He seeks prospective declaratory and injunctive relief.

58. Plaintiff's concrete plans, present restraint, and the announced threat create an actual controversy appropriate for prospective relief. He need not risk the loss of his vote or prosecution before challenging the threatened enforcement. See *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159–66 (2014). The challenged official acts identified above would cause the threatened injury, and an order against those acts would prevent or materially reduce it.

59. The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The Seventh Circuit has recognized that "for some kinds of constitutional violations, irreparable harm is presumed," *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (citation omitted), and has emphasized that harms to intangible constitutional interests "cannot be compensated by damages," *Id*. The loss of a vote and protected speech in this particular election is the clearest example.

**THE CHALLENGED APPLICATION BURDENS PLAINTIFF'S RIGHT TO VOTE**

60. A restriction on the franchise of otherwise qualified residents in a general election requires a constitutionally sufficient justification. See *Hill v. Stone*, 421 U.S. 289, 297 (1975). Plaintiff challenges his complete exclusion from voting because of the Covered Transactions, rather than a minor regulation of voting mechanics.

61. The State has legitimate interests in election integrity, preventing improper influence, and orderly administration. But excluding Plaintiff from the franchise because of the Covered Transactions is not narrowly tailored to a compelling interest. The proposed ordinary

exchange transaction does not involve payment for a vote, bribery, fraud, or interference with ballots or tabulation.

62. Section 6.03(2) does not require proof that the size or nature of Plaintiff's position threatens the integrity of the election. It reaches even a small position and an indirect interest without a finding of improper influence.

63. Voters may have financial interests affected by an election through employment, businesses, investments, government contracts, or government policies without losing their franchise on that account. Those interests are not identical to election contracts, but they demonstrate that a financial stake in an outcome alone does not establish unfitness to vote. Defendants must justify the relevant distinction and the severity of this exclusion.

64. Wisconsin separately prohibits election bribery and election fraud. *See* Wis. Stat. §§ 12.11, 12.13. Direct prohibitions against paying for votes, fraudulent voting, and interference with ballots or tabulation address those harms without disqualifying Plaintiff solely because of the Covered Transactions. The challenged exclusion is unnecessary in light of those protections and the facts of his Covered Transactions.

65. The constitutional defect alleged here is the burden on Plaintiff's franchise and, to the extent the Covered Transactions are protected expression, the condition imposed on that expression.

66. Plaintiff also challenges the threatened rejection of his ballot during the canvass without timely individual notice and a meaningful opportunity to contest disputed grounds. That procedural claim acknowledges the challenge standard and review provisions of §§ 6.325, 6.95, and 5.06 and concerns their adequacy as applied to the particular circumstances alleged in Count IV.

**PLAINTIFF WILL SUFFER IRREPARABLE HARM**

67. The loss of Plaintiff's vote in the November 3 election cannot be repaired by damages or a judgment entered after the election. See *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). Relief must operate in time *for* his intended voting and ballot-processing dates and continue through the counting and canvass of his ballot.

68. The announced threat of disqualification and voting-related prosecution under § 12.13(1)(a) has caused Plaintiff to refrain from the Covered Transactions, and by extension refrain from expressing himself under the First Amendment. The restraint on his expression leading up to the election is an additional irreparable injury.

69. The balance of equities and public interest favor narrowly tailored protection of Plaintiff's constitutional rights while preserving orderly election administration and enforcement against independent violations. Plaintiff seeks no change to ballot design or generally applicable election deadlines. He seeks timely, specific instructions concerning his eligibility, truthful qualification answers, and the receipt and counting of his ballot.

70. The election is November 3, 2026. Absentee ballots have been mailed since September 17, 2026; October 20 is the first permissible day of in-person absentee voting, rather than the beginning of all absentee balloting. Plaintiff intends to vote on election day, November 3, 2026. This action is filed less than two weeks from election day because Plaintiff needed time to find counsel. An order enjoining the WEC from enforcing the law at issue is necessary to ensure Plaintiff's right to expression through the Covered Transactions and vote without risk of felony prosecution on election day.

## CLAIMS FOR RELIEF

### COUNT I

### VIOLATION OF THE FOURTEENTH AMENDMENT
**Undue Burden on the Right to Vote**

**(42 U.S.C. § 1983)**

71. Plaintiff incorporates paragraphs 1 through 69 as if fully set forth herein.

72. Under *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983), and *Burdick v. Takushi*, 504 U.S. 428, 434 (1992), the character and magnitude of the burden on voting must be weighed against the State's asserted interests and the extent to which those interests require the burden. Severe restrictions must be narrowly drawn to advance an interest of compelling importance.

73. As applied to Plaintiff's Covered Transactions, § 6.03(2) imposes a severe burden: it would exclude him entirely from voting in the November 3 general election even though he satisfies every other applicable qualification. Avoiding that exclusion by abandoning the transactions does not reduce the threatened loss of the franchise to a minor inconvenience.

74. For the reasons alleged above, that exclusion is not narrowly tailored to a compelling interest. Defendants' threatened application of § 6.03(2), through their respective challenged acts, violates Plaintiff's Fourteenth Amendment right to vote. Plaintiff seeks prospective declaratory and injunctive relief against those acts.

### COUNT II

### VIOLATION OF THE FOURTEENTH AMENDMENT
**EQUAL PROTECTION**

**(42 U.S.C. § 1983)**

75. Plaintiff incorporates paragraphs 1 through 69 as if fully set forth herein.

76. The Equal Protection Clause prohibits a State from unjustifiably denying the franchise to some otherwise qualified citizens while permitting similarly situated citizens to vote.

77. A State's exclusion of otherwise qualified voters from a general election is subject to strict scrutiny. See *Hill*, 421 U.S. at 297; *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 666–68 (1966).

78. Section 6.03(2), as interpreted by the Commission, distinguishes between otherwise qualified voters who undertake the Covered Transactions and otherwise qualified voters who do not. Plaintiff is similarly situated to the latter voters in citizenship, age, residence, registration, and all other applicable qualifications, yet would be denied his vote solely because of the Covered Transactions.

79. The Commission has announced that this exclusion applies to prediction-market election contracts. Defendants threaten to implement that position through the eligibility, challenge, canvass, referral, and prosecution responsibilities described above.

80. Plaintiff's concrete transaction and voting plans, and his present abstention from the transactions because of the announced enforcement position, establish an actual dispute concerning that unequal treatment.

81. The distinction is not narrowly tailored to a compelling interest for the reasons alleged above, including the nature of Plaintiff's proposed position, the absence of any agreement to buy a vote, and the availability of direct protections against bribery and fraud. Defendants' challenged application denies Plaintiff equal protection of the laws.

## COUNT III

### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
### Unconstitutional Condition on Protected Expression

### (42 U.S.C. § 1983)

82. Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

83. The First Amendment, applied to the States through the Fourteenth Amendment, protects speech and qualifying expressive conduct. An actor's political purpose alone does not make a transaction inherently expressive. See *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65–66 (2006). Plaintiff alleges this claim based on the particular communicative facts concerning his Covered Transactions.

84. Plaintiff's intended transaction is inherently expressive on the particular facts alleged above: it conveys his identified message through observable market activity in circumstances in which the audience of his radio show would likely understand. See *Spence v. Washington*, 418 U.S. 405, 410–11 (1974); *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

85. The threatened application of § 6.03(2) conditions Plaintiff's ability to vote directly caused him to abstain from that expression. Section 12.13(1)(a), with the penalty specified in § 12.60(1)(a), supplies the related threat of voting-related prosecution. A government may not use a condition on a benefit or right to evade First Amendment limits. See *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

86. As applied to the expression alleged here, the exclusion is not narrowly tailored to a compelling interest. Alternatively, if treated as a regulation of conduct with an incidental effect on expression, its burden is greater than essential to further the asserted governmental interest. See *United States v. O'Brien*, 391 U.S. 367, 377 (1968). Plaintiff's allegations concerning the nature of the transaction and the direct protections against election misconduct support both theories.

87. Defendants' challenged acts, within their respective authority, presently deter that expression and threaten Plaintiff's loss of the franchise if he proceeds. Plaintiff seeks prospective declaratory and injunctive relief for this First and Fourteenth Amendment violation.

## COUNT IV

## VIOLATION OF THE FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

## (42 U.S.C. § 1983)

88. Plaintiff incorporates paragraphs 1 through 69 as if fully set forth herein.

89. The threatened rejection of Plaintiff's ballot implicates his protected interest in exercising the franchise. Due process generally requires notice and a meaningful opportunity to be heard before deprivation, with the required procedures assessed in context. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976). This claim concerns the prescribed procedures for the challenged exclusion, rather than an isolated, unintended election-administration error.

90. *Matthews* requires consideration of the private interest affected, the risk of an erroneous deprivation under the existing procedures and the probable value of additional safeguards, and the governmental interest, including the burdens of the additional procedures. *Id.* at 335. Plaintiff's interest is having his vote counted in this election; the requested safeguards are timely notice of proposed rejection and a meaningful opportunity to contest disputed grounds before the rejection becomes irreversible.

91. Sections 6.94–6.95 provide oath, questioning, and canvass procedures, and §§ 6.95 and 6.325 require grounds for disqualification to be demonstrated beyond a reasonable doubt. The §9.01 appeals process referenced in § 6.95 applies to candidates, but not Plaintiff as an elector. Plaintiff does not allege the absence of all process. He alleges a particular risk that his ballot will

be set aside at the canvass without timely notice to him and an opportunity to contest disputed grounds.

92. In Plaintiff's circumstances, the process provided under § 5.06, which allows an elector to complaint and seek judicial review, will not be adequate to prevent injury to Plaintiff because he plans on voting on election day and if his vote were to be rejected during canvassing, he would not receive notice of the rejection. Without timely notice, he cannot exercise the process provided to him under § 5.06. Wisconsin's vote-tracker would not be helpful to Plaintiff in this case because it allows clerks up to 45 days after a general election to record the information in the voter registration system. If the clerk updates his voting information after voting results are completed, Plaintiff cannot meaningfully contest the Commission's rejection of his vote.

93. Defendants responsible for the threatened eligibility and canvass determinations would deprive Plaintiff of his protected interest without constitutionally adequate process in those circumstances. Plaintiff seeks prospective relief against those responsible officials. This count does not allege that the district attorney administers ballot-challenge or canvass procedures.

94. The threatened deprivation follows the challenged enforcement policy and the procedures used to implement it. Timely notice to Plaintiff and a prompt opportunity for him to contest the particular grounds before his ballot is excluded would materially reduce the alleged risk of erroneous deprivation without requiring a general change to election deadlines. Requiring the canvass of challenged ballots first and update of excluded ballots on the website within seven days of the general election would provide Plaintiff (and other voters), who's challenged votes are set aside, with sufficient notice and opportunity to challenge the canvasser's decision before the 14-day deadline to report election results without increasing administrative burdens.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Giganti, Sr. respectfully requests that the Court:

A. Enter a judgment declaring that the challenged application of Wis. Stat. § 6.03(2) to Plaintiff's Covered Transactions violates his federal constitutional rights as pleaded above, and that he may not be denied the right to vote in the November 3, 2026 general election solely because of those transactions;

B. Enter preliminary and permanent injunctions restraining Defendants, within their respective authority, and persons properly bound under Fed. R. Civ. P. 65(d)(2), from disqualifying Plaintiff, rejecting or refusing to receive or count his ballot, or initiating voting-related referral or prosecution under § 12.13(1)(a), solely because of the Covered Transactions. The order should address the related oath and qualification-certification requirements of §§ 6.94, 6.87(2), and 7.52(5), as applicable to his voting method, so that truthful answers concerning those transactions do not defeat the relief. It should protect the receipt, counting, and canvass of his ballot while preserving challenges and enforcement based on any independent ground;

C. If the Court declines to enter preliminary or permanent injunction under (B), Plaintiff, in the alternative, requests this Court to enter preliminary and permanent mandatory injunction requiring canvassers to prioritize the canvassing of ballots marked as "challenged" and update the status of challenged votes that are excluded on the Wisconsin online vote tracking system within seven days of election day to provide Plaintiff with adequate notice and opportunity to challenge any decision to set aside his vote.

D. Require Defendants, within their authority, to give prompt, specific notice of the order to the officials responsible for Plaintiff's registration, voting site or absentee processing, and ballot-challenge and canvass determinations, in time for his intended voting and ballot-processing dates. Require confirmation that the notice has been delivered. The injunction should remain effective through the counting and canvass of Plaintiff's ballot and, as appropriate, until further order or final judgment;

E. Award Plaintiff reasonable attorney's fees and costs under 42 U.S.C. § 1988;

F. Retain jurisdiction as necessary to enforce the judgment and injunctions; and

G. Grant such other and further relief as the Court deems just and proper.

Dated: October 17, 2026

By: /s/ Soriya R. Chhe

Soriya R. Chhe
Bar No. 986736
Attorney for Plaintiff
Competitive Enterprise Institute
1310 L Street NW, 7th Floor
Washington, D.C. 20005
Telephone: (202) 331-2265
E-mail: soriya.chhe@cei.org