COMPLAINT EXHIBIT 3

Wisconsin Elections Commission

201 West Washington Avenue | Second Floor | P.O. Box 7984 | Madison, WI 53707-7984
(608) 266-8005 | elections@wi.gov | elections.wi.gov

**DATE:** July 9, 2026

**TO:** Members, Wisconsin Elections Commission

**FROM:** Staff Counsel

**SUBJECT:** Prediction Markets and Wisconsin Elections

## 1. Introduction

Prediction markets, most prominently run by the companies Kalshi and Polymarket, have quickly emerged and become popular. A person can “buy” shares of a prediction concerning an outcome, and if correct receive money in return, and if incorrect, lose the money offered. This memo concerns prediction markets and elections. While a person may make a bet on many different outcomes, elections are a prominent item on prediction markets, which raises serious but not well-known concerns about voting in Wisconsin. This memo provides to the Commission a general introduction to prediction markets, the current legal landscape of prediction markets and elections, and a recommendation to direct staff to issue a press release on election betting to provide information to Wisconsin voters who may not know that they cannot both make a bet on an election and also vote in that election.

<u>Prediction Markets</u>

A prediction market is an online platform that allows users to trade and invest in real-world “Yes” or “No” outcomes, from sporting events to what the President will say on a given day.[1] They function similarly to a stock exchange, but users can only buy binary contracts (yes/no) on whether a specific event will occur or not.[2] Users purchase shares of “Yes” if they believe an event will happen or “No” if they believe it will not.[3] If they are correct, a trader receives the full contract value of $1.[4] If a trader is wrong, the contract’s value becomes worthless ($0).[5] Shares are priced depending on the odds of an event occurring and

[1] Understanding Kalshi, Polymarket and prediction markets for politics betting, https://www.nj.com/politics/2026/03/the-rise-of-political-betting-markets-how-they-work-and-why-they-matter.html (last visited June 24, 2026).
[2] US election betting boom to test prediction markets’ insider trading controls, https://www.msn.com/en-us/money/news/us-election-betting-boom-to-test-prediction-markets-insider-trading-controls/ar-AA255xBk?ocid=BingNewsSerp (last visited (June 6, 2026).
[3] The rise of political betting markets: How they work and why they matter, https://www.nj.com/politics/2026/03/the-rise-of-political-betting-markets-how-they-work-and-why-they-matter.html (last visited June 24, 2026).
[4] What Are Prediction Markets and How Do They Work? A Complete Guide, https://www.si.com/prediction-markets/guides (last visited June 24, 2026).
[5] Id.

*Wisconsin Elections Commissioners*
*Don M. Millis, chair | Marge Bostelmann | Ann S. Jacobs | Carrie Riepl | Robert Spindell | Mark L. Thomsen*

Administrator
Meagan Wolfe

fluctuate until the outcome is fully resolved, reflecting traders' collective beliefs.[6] For example, if the shares of "Yes" are priced at 84 cents, this implies that there is an 84% chance of the event occurring.

These trades include elections.[7] Some of the highest volume political markets on Kalshi include who will be the 2028 Democratic and Republican nominees for president and who will win the 2028 presidential election.[8] Platforms Kalshi and Polymarket have surged in popularity since the 2024 election.[9]

Prediction markets are regulated by the Commodity Futures Trading Commission (CFTC), which federally regulates financial derivatives.[10] The most prominent prediction market platform, Kalshi, is registered with the CFTC as a Designated Contract Market (DCM).[11] Polymarket has recently launched a U.S. operation, with the CFTC approving its plan to return as a regulated, intermediated trading platform.[12] However, its main exchange is not U.S.-regulated, has not generally mandated "Know Your Customer" identity checks, and while it bars U.S. residents, those controls are easily bypassed, such as with a VPN.[13] "Know Your Customer" identity checks require regulated businesses and professionals to verify the identity, suitability, and risks of maintaining a business relationship with a customer.[14]

Current State of the Law

Regulation of prediction markets has been a recent litigation topic at the state and federal levels.[15] Some states—which have the authority to regulate gambling—believe that they should regulate prediction markets, as they are equivalent to gambling.[16] However, the Commodity Futures Trading Commission believes it should regulate prediction markets under the special rule of the Commodity Exchange Act (CEA), which allows the CFTC to review and potentially ban certain event contracts deemed contrary to the public interest. 7 U.S.C. §§ 7a-2(c)(5)(C)(i)(I), (V).[17] The CFTC regulates event contracts to ensure that trades are done on DCMs and comply with the CEA.[18] The CTFC can only exercise its authority if the contracts involve particular activities enumerated in the CEA including activities that are unlawful activity under any Federal or State law, terrorism, assassination, war, gaming, or other similar activities

[6] Id.
[7] US election betting boom to test prediction markets' insider trading controls, https://www.msn.com/en-us/money/news/us-election-betting-boom-to-test-prediction-markets-insider-trading-controls/ar-AA255xBk?ocid=BingNewsSerp (last visited (June 6, 2026).
[8]The rise of political betting markets: How they work and why they matter, https://www.nj.com/politics/2026/03/the-rise-of-political-betting-markets-how-they-work-and-why-they-matter.html (last visited June 24, 2026).
[9] Prediction market bets on sports, election, war would be verboten under new legislation, https://www.cnbc.com/2026/03/26/prediction-markets-sports-election-war-legislation-kalshi-polymarket.html?msockid=1e154e40ec836f6b24b55936eda76efc (last visited June 24, 2026).
[10] The rise of political betting markets: How they work and why they matter, https://www.nj.com/politics/2026/03/the-rise-of-political-betting-markets-how-they-work-and-why-they-matter.html (last visited June 24, 2026).
[11] Id.
[12] Id.
[13] Focus: US election betting boom test prediction markets insider trading controls, https://www.reuters.com/legal/government/us-election-betting-boom-test-prediction-markets-insider-trading-controls-2026-06-08/ (last visited June 24, 2026).
[14] Know Your Client (KYC): Key Requirements and Compliance for Financial Services, https://www.investopedia.com/terms/k/knowyourclient.asp (last visited June 24, 2026).
[15] Prediction Markets in the United States: Legal, CFTC & State Gambling Risk Overview, https://aurum.law/newsroom/Prediction-Markets-in-the-United-States-Legal-CFTC-State-Gambling-Risk-Overview (last visited June 24, 2026).
[16] Id.
[17] Id.
[18] Id.

contrary to the public interest.[19] The issue of who gets to regulate election contracts in prediction markets comes down to whether or not they are "gaming" under the special rule of the CEA or involve unlawful activity under State law.[20]

In 2024, the CFTC attempted to exercise its authority under the CEA by prohibiting Kalshi from offering "congressional control contracts" on which party would take control of Congress in the midterm election. *KalshiEX LLC v. Commodity Futures Trading Comm'n*, No. CV 23-3257 (JMC), 2024 WL 4164694 (D.D.C. Sept. 12, 2024), *dismissed*, No. 24-5205, 2025 WL 1349979 (D.C. Cir. May 7, 2025). Kalshi filed suit challenging the CFTC's order as arbitrary, capricious, and contrary to law under the Administrative Procedure Act. 5 U.S.C. § 706. *Id.* at 1. The DC District Court judge granted summary judgement for Kalshi, holding that elections are not games so "congressional control contracts" are not "gaming" by its "ordinary, plain meaning" and therefore do not fall under the CFTC's mandate. *Id.*at 7.

In Wisconsin, Wis. Stat. § 6.03(2) disqualifies electors from voting "in any election in which the person has made or become interested, directly or indirectly, in any bet or wager depending upon the result of the election." *See* also, Wis. Stats. §§ 6.87(2) (absentee voter certification of qualifications) 6.94 and 7.52(5)(b) (challenged elector oath), and, especially, 12.13 (creating a class I felony for "vot[ing] at any election or meeting if that person does not have the necessary elector qualifications and residence requirements"). Wisconsin Stat. § 945.01(1) defines "Bet" as "a bargain in which the parties agree that, dependent upon chance even though accompanied by some skill, one stands to win or lose something of value specified in the agreement."

Additionally, Governor Tony Evers signed Executive Order #294 to address the growing concern for government officials' use of prediction markets, which prohibits all Wisconsin state executive branch employees from "disclosing or using any nonpublic information obtained due to their public service to personally profit from, avoid loss from, or assist another person or entity, including spouses and family members, in profiting or avoiding loss from participating in prediction markets." Wisconsin also has laws against insider trading in general. *See*, Wis. Stat. § 611.31.

There are currently no federal laws addressing prediction markets for elections, however the Stop Trading On Predictions (STOP) Corrupt Bets Act of 2026 (H.R. 8123) which would ban prediction market bets on elections has been introduced as a bill. The U.S. Senate has also banned its members and staff from prediction market betting.

### 3. Discussion

Commission staff believe that the increasing prevalence of prediction markets raises the possibility that Wisconsin electors may attempt to place a bet or wager on an election and then vote in that election in violation of Wis. Stat. § 6.03(2).

Wisconsin faces a similar challenge as the CEA in *Kalshi EX LLC v. CFTC* in determining whether placing trades on an election-related prediction market qualifies as "any bet or wager," which would disqualify an elector from voting in that election. Commission staff believe the prohibition against "any bet or wager depending upon the result of the election" § 6.03(2) includes making trades on election-related prediction

---

[19] Are Politics About to Get Even More Corrupt? Federal Courts Allow Gambling on Elections, https://www.findlaw.com/legalblogs/federal-courts/are-politics-about-to-get-even-more-corrupt-federal-judge-allows-gambling-on-elections/ (last visited June 24, 2026).
[20] Id.

markets."[A]ny bet or wager" is all-encompassing language that suggests prediction markets would be included in this prohibition, preventing an elector from voting who has placed a bid on an election-related prediction market. At the very least staff do not see how an elector could, in the context of a challenge, truthfully say that they "have not made any bet or wager or become directly or indirectly interested in any bet or wager depending upon the result of this election" if they have offered money in a prediction market, and would receive money if they are correct and lose money if they are incorrect.

Despite the ongoing legal disagreements on whether prediction markets are "bets," Wisconsin law is relatively clear that an elector cannot, even indirectly, both make a bet or wager on the outcome of an election and then vote in that same election. It is also increasingly easy to participate in such predictions, and the prominence of these markets is likely far greater than knowledge about Wis. Stat. § 6.03(2). Staff are not here concerned with the legality of placing a bet on an election in general, but believe that electors should know that if they do place such a bet, Wis. Stat. § 6.03(2) likely prohibits them from voting and that Wis. Stat. § 12.13(1)(a) makes it a class I felony to vote without being qualified to do so.

**4. Conclusion**

Commission staff believe that predication market betting on elections is likely to become more prevalent in Wisconsin. With the lack of clarity and legal consensus concerning whether prediction markets qualify as gaming or betting, many Wisconsinites may not understand using prediction markets as betting at all, or that such actions prevent them from voting under Wis. Stat. § 6.03(2) subject to felony-level consequences. Staff recommend that the Commission direct staff to issue a press release that raises awareness about this issue.