# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH GIGANTI, SR.,**

**Plaintiff,**

**v.** **Case No. 26-CV-1934**

**PATRICK W. MOYNIHAN, JR., et al.,**

**Defendants.**

## DECISION AND ORDER

### 1. Background

Joseph Giganti, Sr., wants to purchase contracts on Polymarket US predicting who will win the elections for the Wisconsin governor and for Congress in Wisconsin's Third Congressional District. (ECF No. 1, ¶ 52.) Giganti also plans to vote in those elections.

Wisconsin, however, forbids any person from voting "in any election in which the person has made or become interested, directly or indirectly, in any bet or wager depending upon the result of the election." Wis. Stat. § 6.03(2). The Wisconsin Elections Commission, which oversees elections in Wisconsin, adopted a memorandum and issued a press release advising voters that buying election-related shares in a prediction market like Polymarket may violate Wisconsin law. It stated, "Voters who place bets on elections and then try to vote in that election may be subject

to voter qualification administrative challenges, which, if successful, would prevent them from being able to cast their ballot and could also result in a referral to the District Attorney." (ECF No. 1-5 at 2.)

Several months after that press release and only about three weeks before the relevant election, Giganti filed this action seeking declaratory and injunctive relief that Wisconsin's law barring voters from placing bets or wagers on elections is unconstitutional. Before the court is Giganti's motion for a preliminary injunction.[1] (ECF No. 4.)

**2. Applicable Law**

A preliminary injunction is an extraordinary remedy that the court should issue only when it is clearly demanded. *See Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020) (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008); *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1085 (7th Cir. 2008)). "To obtain a preliminary injunction, a plaintiff 'must establish that it has some likelihood of success on the merits; that it has no adequate remedy at law; [and] that without relief it will suffer irreparable harm.'" *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (quoting *Planned Parenthood of Ind. & Ky., Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018)). Only if the plaintiff satisfies each of these three threshold requirements does the court proceed to the next phase of balancing the harms to the parties and whether

[1] The defendants refer to the plaintiff's motion as one for a temporary restraining order. The plaintiff, however, sought a preliminary injunction, albeit on an expedited basis under Civ. L.R. 7(h). A court may issue a preliminary injunction only on notice to the non-movant, Fed. R. Civ. P. 65(a)(1), and the defendants' response to the motion was not due until seven days after they appeared. *See* Civ. L.R. 7(h).

the injunction is in the public interest. *GEFT Outdoors,* 922 F.3d at 364. In this second phase the court employs a sliding scale whereby, for example, a great likelihood of success may tip the balance in the plaintiff's favor notwithstanding a significant likelihood of harm to the defendant. *Id.*

**3. Analysis**

Giganti frames Wisconsin's law barring voters from wagering on elections as an unconstitutional infringement on his right to vote. He also underscores that he is a radio talk show host and that he intends to publicly discuss his purchase of contracts regarding the gubernatorial and Congressional elections in conjunction with indicating his support for his preferred candidates. (ECF No. 4-1, ¶ 10.) Thus, he characterizes his inability to buy contracts regarding the outcome of elections he votes in as a violation of the First Amendment.

The legal nature of prediction market contracts in Wisconsin is unsettled, *United States v. Wisconsin*, No. 26-C-749, 2026 WL 2474512 (E.D. Wis. July 29, 2026), *appeal docketed*, No. 26-2636 (7th Cir. Aug. 24, 2026), and it is unclear whether a prediction market contract is a wager or bet within the scope of Wis. Stat. § 6.03(2). While the Wisconsin Elections Commission has expressed its view that prediction contracts are bets, the view expressed in its memorandum does not have the force of law. Nonetheless, Giganti's claims depend on the premise that prediction contracts are bets or wagers under the statute. Only if prediction contracts are bets or wagers do they implicate a voter's eligibility under Wis. Stat. § 6.03(2). Therefore, for present

purposes the court will accept that the Wisconsin Elections Commission's interpretation of Wis. Stat. § 6.03(2) is correct.

Giganti's contention that the law infringes his right to vote is unavailing. Rather, the law affects only his ability to wager (or buy prediction market contracts) regarding certain elections, which is not constitutionally protected. *See United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993); *Doug Grant v. Greate Bay Casino Corp.*, 232 F.3d 173, 189-90 (3d Cir. 2000); *Ky. Div., Horsemen's Benevolent & Protective Ass'n v. Turfway Park Racing Ass'n*, 20 F.3d 1406, 1412 (6th Cir. 1994). Because Giganti has not purchased a prediction contract, there is no risk that Wisconsin's law barring voter wagering will result in his vote being challenged or Giganti being prosecuted for voting when not qualified to do so.

His effort to characterize the purchase of a prediction market contract as expressive activity because he wants to talk about the purchase on his radio talk show is similarly largely unpersuasive. Giganti wants to be able to say that he purchased a prediction contract predicting that certain candidates will win election. Instead, he can legally say only that he would purchase a contract if he was not also voting in the election.

The Wisconsin Elections Commission's memorandum and press release are sufficient to demonstrate that enforcement is likely and imminent, and thus Giganti has standing to pursue his First Amendment claim. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). However, in terms of expressive content, the distinction between Giganti saying he placed a bet and he would have placed a bet if

legally allowed to is negligible. Nonetheless, the court will presume that Giganti has satisfied the relatively low threshold to prove that he has *some* likelihood of success on the merits. *Storck USA L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). The court turns its attention to the balance of the harms and whether a preliminary injunction is in the public's interest.

Giganti characterizes the potential harm as the loss of his vote. However, because he has not purchased a prediction contract, he is at no risk of his vote being challenged. Rather, he faces only the loss of an opportunity to purchase a prediction market contract, and the upside should his prediction prove correct (albeit without the downside risk should his prediction prove wrong). Such an injury is ordinarily readily compensable; the defendants could pay Giganti damages in the amount of what he would have obtained from his prediction market contracts. This, however, is made more complicated by the fact that some of the defendants are state officials who enjoy sovereign immunity from suits for damages. It is unnecessary for the court to delve into this question now. The court presumes that the loss of the potential upside from a successful prediction constitutes irreparable harm in light of the fact that sovereign immunity may bar Giganti from recovering monetary damages. Moreover, any deprivation of a First Amendment right is presumptively irreparable. *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 450 (7th Cir. 2022). Thus, the court also accepts that Giganti has made the requisite minimum showing that he has no adequate remedy at law and that he will suffer an irreparable harm.

Balancing all relevant circumstances, the scale tips decidedly against granting a preliminary injunction. Again, because Giganti has not purchased as prediction market contract he faces no risk that his vote will be disregarded. As such, he does not appear to have any chance of success on this claim. The only plausible harm of constitutional dimension that he faces is that, rather than saying that he purchased a contract predicting that his preferred candidate would win, he can say only that he would have purchased a contract valued at a few hundred dollars but for Wisconsin's law. In terms of expressive content, there is, at best, a minimal distinction between the two statements.

States (and the public) have a well-established and strong interest in prohibiting any form of wagering by a voter in an election, including the purchase of prediction contracts by voters. *Murdock v. Kilbourn*, 6 Wis. 468, 470 (1857) ("A most pernicious influence would be exerted upon our institutions of government, if the elections which the people make of their public officers should be made the instruments and the occasion of gaming."). For example, a person accepting a voter's bet on an election is offering the voter an incentive to vote a certain way. By skewing the odds, a person taking the bet can essentially buy the voter's vote through a scheme disguised as a bet. That the state has other laws protecting the integrity of elections does not undermine the state's interest in this particular prohibition. The ban on voters betting on elections acts to close a loophole that could be exploited if the state law proscribed only matters such as bribery, multiple voting, or ballot tampering. (*Cf*. ECF No. 4 at 2 (citing Wis. Stat. §§ 12.11(1m), 12.13(1)(d)–(e), (3)(e)–

(f)).) Moreover, democratic and civic functioning depend on voters voting for the person they believe to be the best for the position. Bettors are commonly influenced by very different criteria, yet voters who bet on elections have an incentive to vote for whichever candidate they bet to win. Voters may use diverse metrics for measuring their view of who is best, but voting for a candidate based on the payoff the voter stands to gain from a prediction contract is inconsistent with proper democratic functioning. Given this strong public interest, Giganti has only a minimal chance of succeeding on his First Amendment claim.

Consequently, while the court presumes that Giganti has demonstrated some likelihood of success on the merits, that he has no adequate remedy at law, and that without relief he will suffer irreparable harm, the balance of the harms do not favor a preliminary injunction. Therefore, the court must deny Giganti's motion for a preliminary injunction.

**IT IS THEREFORE ORDERED** that Joseph Giganti, Sr.'s Motion for Preliminary Injunction (ECF No. 4) is **denied**.

Dated at Green Bay, Wisconsin this 2nd day of November, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
U.S. District Judge